Good morning, your honors. May it please the court. My name is Tony Friedman. I represent the appellants, the White Knight Diner, LLC, Karen Freiner and Larry Lee Hines. We've appealed the district court's August 2nd, 2021 final judgment, which granted the appellee owners motion for summary judgment on White Knight's breach of contract claim. Counsel, could you raise your podium a little bit? Get a little better audio. Yes, your honor. Thank you. Is this okay? Yes. We've appealed the district court's grant of summary judgment on White Knight's breach of contract and duty of good faith and fair dealing claims, as well as the denial of White Knight's motion for partial summary judgment concerning the propriety of owner so-called subrogation claim. The legal issue that was dispositive of both the appellant's motion for partial summary judgment and the appellee's motion for summary judgment was, in our view, decided incorrectly. Specifically, the district court at appellant's addendum, page 10, stated that owners in this situation did something that is neither illegal nor violative of any policy provision provided to the court. It simply asked for the money. What owners actually did, however, was illegal and violative of the subrogation provision of the insurance policy, reproduced at pages 13 and 14 of the appellant's brief. Counsel, what relief are you seeking from us? What is it you want us to do? Thank you, your honor. The appellant asked for this court to vacate the district court's grant of summary judgment on our breach of contract and duty of good faith and fair dealing claims, and to reverse the district court's ruling denying our motion for partial summary judgment that the actions by the insurance company owners, in this case, were violative of Missouri law and also breach of the insurance policy in question. In this case, to back up briefly, the White Knight Diner suffered extensive property damage when two cars collided and crashed into the entrance of the diner. White Knight filed claims with its insurance company, Owner's Insurance, who paid White Knight $66,336.27 for its property damage and business income losses. Owners, the insurance company then, asserted a quote-unquote subrogation claim to the insurance companies for the two drivers involved in the collision. The documents that at least are in the record, it seems like the letter says we're reaching out, or at least the company that they hired to reach out to the American family, State Farm and Progressive, said we're serving subrogation rights, but then they called it a request for payment. That's how the district court described it, if I'm correct. Tell me what the language means. Is there significance in the language that was used in that request? Yes. Thank you, Judge Kelly. There is significance in the language because it's our position that what was asserted, whether its terminology is a request for payment, request for reimbursement, or subrogation, which was used by owners through its agent Trovers, it's all one and the same. The only authority that owners had to collect any money to recuperate the payments that it's made under the insurance policy contract would have been through subrogation. Subrogation in Missouri has a well-defined scheme and system that is set up, and so by modifying the terminology, owners cannot thereby rewrite the subrogation laws of Missouri. What's the effect of the payment being made without litigation or even threat of litigation? They just paid. That's accurate, Your Honor. State Farm just paid $33,000 approximately, in which it believed it was reimbursing owners for payments that owners had made to the White Knight Diner. The unfortunate effect of that payment was to stymie the subsequent litigation that White Knight Diner engaged in in order to recoup both its insured and uninsured filed suit against the two tortfeasor drivers and eventually settled with both of those drivers. As laid out in our brief, that settlement was less than expected, and the value of that settlement and of that case was diminished due to the actions of owners requesting money from State Farm, which it was not legally entitled to. What's the proof of that in this case, or what were the allegations to show that that diminution of the value of the claim occurred because of this voluntary payment? Throughout the course of litigation, the underlying White Knight v. Arango litigation, the settlement posture of the defendants who were on the State Farm side was markedly different than would have been otherwise, and one can see that in the eventual settlement monies received by White Knight Diner in that underlying litigation, which matched precisely with the policy limit of State Farm minus the amount of money State Farm paid over to owners on the so-called subrogation claim. The difference between those two numbers was what a State Farm was willing to pay in settlement of those claims. Does it matter that State Farm was not required that when State Farm did not get to offset, that went through the State litigation? Does it matter that there was no requirement that that happened, at least not from a legal standpoint? Tell me about it. I'm trying to figure out how this is unlawful. Maybe it's underhanded. Maybe that's what you're suggesting, although I think your client got notice of it, but I'm trying to figure what that interaction between State Farm and owners, what was unlawful about it? What was unlawful about it is that it was presented as if it were a proper subrogation claim, and in fact it was not, and it's being recast by the District Court as a voluntary request for payment or a donation. But it can't really be a proper subrogation, can it? Because that would be going directly to your client, White Knight, right? So they went straight to the insurance company, and that's not subrogation, is it? That's correct. That's improper subrogation. So it was cast by owners as a subrogation claim, when in fact it was not exercised as a proper subrogation claim, and in fact no claim for subrogation was ever made by owners upon my client, the White Knight Diner. Counselor, I think maybe what you're saying is that because White Knight and owners entered into a contract under which owners had the right to subrogation, that they were limited to that remedy and that they did something else that was a breach of contract. Is that your position? And if so, could you expand on that? Yes, thank you, Your Honor. That is our position with respect to the breach of contract claims and the duty of good faith and fair dealing. The only way in which owners, the only option owners had in order to recoup any paid over to White Knight Diner was through the contractual grant of subrogation. Owners chose not to properly exercise, or to Judge Kelly's point, to exercise that grant of subrogation at all, and as that was its exclusive remedy under the insurance contract, having failed to engage in subrogation pursuant to the contract is, in our view, a breach of contract. And what authority under Missouri law do you cite to for that? The primary cases that we cite under Missouri law are the Hagar v. White Knight Tire Company, which lays out certain of the procedures enshrined in Missouri law with respect to subrogation. With respect to the breach of contract claims, we point to the Keysker case. The Keysker v. Farmer action, which interpreted the identical language in an insurance contract having to do with subrogation, the Keysker case makes clear that a provision like this that reads precisely like this is, in fact, a subrogation provision, not an assignment of the claim, which perhaps would have allowed a company like owners to assert in a direct way a claim for reimbursement upon a tortfeasor's insurance company. Was there language in Hagar that indicated that there was an unlawful act? The Hagar case did not reach the conclusion that the actions by the defendant's insurance company or shelter insurance company were unlawful. The Hagar court emphasized the procedures that need to be followed for a subrogation claim, and it is clear that those procedures were not by owners. The Hagar case did not involve precisely the same issue, and to answer your question directly, no, they did not decide that that action was illegal. The Hagar court did make So to my earlier question, there really isn't clear authority that there's been illegal conduct under the facts that we're studying here? Not precisely under those facts. The argument here, which is laid out in the record, is that owners asserted a purported subrogation claim and didn't follow the procedures of Missouri law for asserting such a subrogation claim. And the crux of the issue as well is that the White Knight Diner suffered damage as a result, with the diminution in value of its settlement position and its litigation positions in the underlying litigation. And at the very least, there are rather than to be disposed of summarily, as the district court did. If I could follow up on the Hagar case, do you think there's anything in that case that even suggests that what Shelter was doing there was improper? I mean, really, the focus is is not where we are here. It was on the kind of offset issue, which is sort of the, well, that's the route you chose, and so you don't get the offset. Do you read anything in Hagar to give us any kind of tea leaves about whether or not the Missouri courts thought that what Shelter was doing was either a breach of a contract or somehow otherwise against public policy? The Hagar court didn't reach the question of whether what the insurers were doing there was a breach of contract. As you said, rightly, that case had much more to do with the set-off issue. There were suggestions in the Hagar case that what had occurred was more underhanded and sneaky, but did not reach the ultimate conclusion of whether it was unlawful under Missouri law for the insurance companies involved to engage in the perhaps voluntary payments that were made in that case. Thank you. Unless there's any remaining questions, I'll reserve the rest for you. Mr. Uday, when you're prepared. Okay. Good morning, and may it please the court. My name is Lucas Uday. I am counsel for Appel E. Owner's Insurance Company. Because there are no true issues of material fact and because owners cannot be said to have done anything illegal or unlawful, owners respectfully request today that this court affirm the judgment entered by the district court on August 2nd of 2021, which was in owner's favor. Counsel, the district court's decision is based, at least in my view, on its understanding that owner's dealings with State Farm did not constitute an exercise of its dealings with State Farm at least 12 times as subrogation. Does owners concede that it exercised its subrogation rights under the policy? Your Honor, the policy provision at issue vests in owners, upon payment of a claim under the policy, an equitable right to subrogation to recover that payment. What the courts in Missouri, the cases that we've been discussing this morning that are discussed in the brief synosium that are referred to by the district court in the order, have dealt with are the legal way in which insurance companies like owners can pursue those subrogation rights in Missouri courts. Those cases have never dealt with a case where on these facts, on this particular issue, owners sent a letter through an agent to the insurance company. So the district court concluded that it was not subrogation, it was a voluntary payment. And yet your brief refers to it as subrogation at least 12 times. So which is it? Your Honor, State Farm absolutely made a voluntary payment. It did not make a payment in response. What were you speaking? Did you consider it a subrogation effort on the part of your company? In big of subrogation. What would you have done if they had not voluntarily paid? Owners would not have been able to file suit against them, Your Honor. Owners would have had to intervene in an action by and through the insureds and the insured's name. The way those are filed in Missouri is the insurance company files suit, owner's insurance company as subrogee of so and so, and pursued the claim in that route. Or the insured sues the at-fault party directly. Owners would intervene, as owners actually intervened in the underlying Arango litigation in this case, for a determination on the back end of the case as to who those ultimate proceeds should be apportioned of as between the insured and the insurer. And I would know... So sending the letter is a quicker, cheaper way to get the money up front? Sending the letter, which was sent with the notice to the insured... Your Honor, Judge Kelly, you've already noted the letters that were sent to the insured, the communication that happened with regard to subrogation efforts. Sending the letter allows that conversation to occur without the need for litigation, yes. So these were subrogation efforts? Outside of court, Your Honor, yes. Outside of the courtroom, yes. Counsel, but by doing so, didn't owner's insurance company undercut White Knight's litigation position and force them to settle for what remained of the policy maxim? Absolutely not, Your Honor. That's what they did. Well, absolutely. White Knight Diner ultimately, years later, accepted State Farm's settlement offer that was extended to them of $16,000 and change. The record makes abundantly clear that State Farm, in their settlement negotiations and in the request to owners, because State Farm did eventually make a request for owners, hey, pay us back this $33,000 and change. When it did so, and it's in the record at documents number 2711, 2980, 3018, and then 3629, State Farm never said, give us back this money so that we can have our full $50,000 to pay your insured. State Farm said, we don't think we owe this money whatsoever. We don't think our insured was at fault. If our insured's not at fault, we don't owe you. We also don't owe them. And in the settlement negotiations that are documented in the record, the only documented settlement negotiations that involve State Farm on this topic is that they told the White Knight Diner's lawyer, we don't think your claim is worth that much. This is what our offer is. If it was a voluntary payment or a gift, as the district court concluded, what basis would they have to recover the money? They don't have it, Your Honor. The Hagar case speaks directly to this. This is actually the money that the owners had made voluntarily. It does not have any right whatsoever to a set-off or to reduce the amount that it ultimately has to pay to the insured in the case. In that case, the Hagars were able to recover their full judgment from the at-fault liability or from the at-fault party's liability carrier, just like in this case in the Arango decision. The City of St. Louis, the circuit judge, Judge Durker, said, I'm not allowing a set-off for the tort fees or for the amount that State Farm previously owed us. I follow your argument, counsel, but in the real world, it put them in the position of having to go forward with very expensive litigation. It changed the whole dynamic of the, they could either settle for the, what was left of the policy limits, or they could expend a lot more money litigating it. Well, the only case law on point, Your Honor, says that if they expend the money to pursue the case, or if they were able to implore State Farm to offer more, that State Farm would have had to pay that. Hagar actually says in the holding on the issue that's directly at issue in Hagar, the insurance company may end up paying $46,600 more than it had to. Once the policy limit had been reached, wouldn't they be at risk of having a judgment-proof debtor? No, Your Honor. There's no basis whatsoever for State Farm to have asserted that we don't owe you this money. There's no basis to say, you know, you've taken this judgment against our insured for, you know, whatever judgment you got. Because we previously paid owners, we don't owe you this amount. And we didn't get a release for it. We've not protected our insured. To the exact opposite of that... Wasn't the defendant the driver? The defendant was the driver, yes. So they're actually the one on the hook? They're actually the one that the judgment would be entered into. And then... And if they have no money, then what does White Knight get? White Knight would still be able to pursue the full amount of their judgment. There's no basis for State Farm to argue, well, we paid state, we paid owners $33,000. We depleted your policy, we depleted your policy limits. We got no release in favor of you insured. However, we're not going to pay this judgment that's now been taken against you because we paid 33... We're not going to reduce this by $33,000 because we improperly paid that to somebody else. The only evidence in the record of that, Your Honor, is that would not be a reasonable position for the insurance company to have taken whatsoever. And in any event, the case never ever got there because White Knight dismissed their case. They took the money and they dismissed the case. With the rulings in place that they would... The defendant would not be entitled to a set-off. And we actually... We've quoted the exact deposition testimony from White Knight Diner's primary officer, Mr. Hines, where he testified that he knew that was the case. He knew they'd be able to recover from State Farm. However, at that time, they made the strategic decision to dismiss the pursuit of the claim against State Farm's insured in exchange for the amount that was being offered and to pursue a class action litigation against owners. So it was a decision that was made. It wasn't something that was forced on them by any way, in any way, shape, or form. With respect to... Specifically with respect to the summary judgment that was entered in owner's favor, on appeal, the appellants have now raised the question of whether or not there were questions of material fact, specifically whether or not the district court's finding as to whether or not there was a breach of contract should be considered a question of fact that ultimately should be left to a jury. That's what's laid out in the briefs as being the question of fact issue. That was not raised before the district court in the summary judgment motions or in the response to this owner's summary judgment motion. That issue... I understand White Knight's position. It's that owner's insurance company had agreed with White Knight to a policy under which owner's insurance company had the right of separation. But owners did not exercise that according to the district court. They did something else. And White Knight is saying that's a breach of contract. What's your response to that? My response to that, Your Honor, is that the policy includes a provision that allows for owners to an equitable right of subrogation for amounts that are paid. The policy does not dictate the manner by which owners is allowed to pursue that subrogation interest. So then you are admitting that it was subrogation. I think I said earlier that it was owners... The district court said it wasn't. Well, the district court at page 10 of its opinion, Your Honor, said this very well may have been, quote, subrogation. And what the district court is getting at is this was not. Don't you have to follow Missouri law? If we would have pursued a lawsuit, Your Honor, then in those situations... But they bargained with the owner's insurance company for a contract that said you have a right of subrogation. An equitable right. So if you did something else, is that a breach of contract? No, Your Honor. The policy does not dictate the manner by which owners can pursue its interest under that provision. It seems like you tried to have subrogation or it's not. Well, no, Your Honor, what Missouri law has interpreted as to an insurer's equitable right of subrogation as the manner by which an insurer can pursue legal recourse in the courts. You cannot... As long as they stay on court, they can do whatever they want. If it's not been... The Missouri courts have not spoken to whether or not what owners did. No one has ever declared that to be... And that doesn't offend the benefit of the bargain that was struck with White Knight? No, Your Honor, absolutely not. The benefit of the bargain that was struck with White Knight was you get this insurance, we pay your loss, we have the right to recover what we pay on the back end from the at-fault parties. White Knight Diner got that. White Knight Diner's property was restored. But they also got some interference with their lawsuit under their way of thinking. Alleged under their way of thinking, Your Honor, but as the record makes clear, there's absolutely nothing in the record to support that whatsoever. They've alleged it. They continue to allege it. But if the court, as the district court did, looks past the allegations, looks past the hyperbole and looks past the exaggerated allegations and the briefs, the court will see that owners, like Judge Kelly pointed to earlier, owners didn't do anything behind the insured's backs as has been alleged and has been drugged throughout the briefs. Owners communicated with the insured's about what was happening and what was going on. Owners did not arbitrate and settle a claim that's been claimed in the briefs. That never happened. And the record that was before the district court at the time of the summary judgment disposition, the record that's before this court, contains absolutely no proof whatsoever that the White Knight Diner, the appellants, that they were stymied or that they were, they were... What about the fact, just the simple allegation, the fact, I guess, uncontested, that they got the policy limits minus what State Farm had already paid owners? Ultimately... Down to the penny, right? Ultimately, Your Honor, that is what was paid. That is what was paid. State Farm ultimately paid $50,000. So it's a practical effect. It was an offset. Well, I don't think it's a practical effect. It's just what they accepted on the back end, despite having an absolute right to obtain more. They chose to take that. And that, as having, as I stated earlier, that payment being tied to what's left under the limits, it was referred to today as, you know, that's what the settlement discussions were. However, if you look at the record at those pages that I specifically cited, which are the only pages in the record that have anything to do on that specific topic, that's not the basis for why State Farm was saying, we'll pay you this amount. State Farm was saying, we'll pay you this amount. We don't think we owe anything more. Not because, because we don't think our insured was at fault. Not because we paid owners this much money. This is all we have left in our policy. And we're only going to pay this much more, despite then opening ourselves up to excess litigation against our own insured if we choose to go down that path. In any event, nobody ever got there because they voluntarily settled that case. So, so if there are no further questions, owners, owners would restate that there, there has been absolutely nothing unlawful or illegal in any way, shape, or form that's been pointed out to this court. The, the council has conceded that the cases cited do not support those allegations. And lastly, there are no actual issues of questions of fact before the court or before the district court at the time that it made its decision. And the issue that's now been raised as an issue of fact was not even presented to the court as a question of fact at the district court level. Thank you very much. Thank you, Mr. Yudy. Thank you, Your Honors. May it please the court. The transaction between Owners and State Farm Insurance, whether it is a gratuitous payment or as conceded by my friend on the other side, a subrogation claim, worked out exactly as intended for Owners Insurance Company and for State Farm. Owners was protected on the front end, claiming 50% of the reimbursement that it would have sought potentially after years of litigation. And they were also protected on the back end because they knew that if Owners pursued litigation against the tortfeasors, whose insurance companies was, was State Farm was one of those, then they would also be protected and be able to dip into any recovery that White Knight would have obtained from State Farm's insured. Owners wants to have it both ways. And so they created this legal fiction because they don't like how Missouri's subrogation law works. Missouri's subrogation law enshrines Missouri's policy of protecting the insureds over the insurance company so that an insured can obtain their full recovery of both insured and uninsured losses prior to any reimbursements that may need to be made through valid or legal subrogation claims. Owners got it both ways and they want to continue to do it that way and create essentially their own subrogation or reimbursement markets amongst insurance companies in order to both protect themselves on the front end and still keep the benefit of the potential back end option. Why wouldn't this be a better cause for seeking legislation than litigation where the authorities for the relief you seek seem difficult to, to grasp? Your Honor, I think we've had that discussion in my office on a number of occasions. But in this case, the breach of contract claim and the breach of duty and good faith claims are recognizable. The authorities that underlie those and that set up the structure of Missouri's subrogation law are recognizable and comprehensible. Essentially, what we're talking about is the Hagar v. Wright tire case and other cases that have cited to that precedent in which Missouri's subrogore and a subrogee. And Missouri policy favors the recovery by the subrogore as opposed to the subrogee. Mention was made of the benefit of the bargain. The benefit of the bargain that White Knight, that was part of the White Knight owner's insurance policy included, yes, payment for property damage and for business income losses and, of course, the payment of monthly premiums. But it also included a well-defined right of subrogation that had included within it all of the protections that Missouri's subrogation law provides. That was a part of the bargain that was struck between owners and White Knight. And that denial of that benefit of that contract underlies White Knight's breach of contract claims that, in our view, should be reversed and sent back down to the district court. Thank you very much. Thank you very much also, Mr. Friedman and Mr. Yudy. We appreciate both counsel's presentations to the court this morning and your responses to our questions. We will take the case under advisement, render decision in due course.